# EXHIBIT C

COPY

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

Court of Appeal, First Appellate District
**FILED**
AUG 17 2018
Charles D. Johnson, Clerk
by_____Deputy Clerk

TWITTER, INC.,

      Petitioner,

v.

THE SUPERIOR COURT FOR THE
CITY AND COUNTY OF SAN
FRANCISCO,

      Respondent;

JARED TAYLOR et al.,

      Real Parties in Interest.

A154973

(San Francisco County
Super. Ct. No. CGC18564460)

## ORDER ISSUING ALTERNATIVE WRIT OF MANDATE

The court has conducted a detailed review of the petition, the record, and the parties' briefing below.  Normally, upon receiving an apparently meritorious writ petition, this court would permit the filing of informal opposition prior to directing the issuance of an alternative writ.  However, this court has discretion to issue an alternative writ without first requesting opposition (Cal. Rules of Court, rule 8.487(a)(4)), and under the circumstances presented, this court exercises its discretion to do so.  Therefore, pending further consideration of the petition for writ of mandate, prohibition, and/or other appropriate relief on file herein, with the exception of proceedings necessary to respond to this alternative writ of mandate, all proceedings in *Jared Taylor, et al. v. Twitter, Inc.,* San Francisco County Superior Court case No. CGC18564460, are hereby STAYED until further order of this court.

It appears respondent superior court erred in issuing its July 10, 2018 order overruling in part petitioner's demurrer to the first amended complaint of real parties in interest.  We recognize, however, that when respondent issued its order, it may not have had the benefit of the analysis of *Hassell v. Bird* (2018) 5 Cal.5th 522 (*Hassell*), which the California Supreme Court had filed on July 2.  We glean the following facts from the exhibits attached to the petition.

Petitioner, Twitter, Inc., is a private internet communications platform that users can join and use for free.  In 2011, real parties in interest Jared Taylor and New Century

193

Foundation joined Twitter and created user accounts. At the time they joined Twitter, real parties agreed to Twitter's User Agreement, including Twitter's Terms of Service (TOS) and the Twitter Rules (Rules). At the time real parties joined the platform in June 2011, the TOS "reserve[d] the right at all times . . . to remove or refuse to distribute any Content on the Services and to terminate users or reclaim user names." Later versions of the TOS included an additional provision stating that Twitter "may suspend or terminate your accounts or cease providing you with all or part of the Services at any time for any or no reason." Real parties allege that on October 2, 2017, the foregoing provision was amended to read: "We may also remove or refuse to distribute any Content on the Services, suspend or terminate users, or reclaim usernames without liability to you."

As of June 2011, when real parties joined Twitter, the Rules consisted of a three-page document that stated Twitter "will not censor user content, except in limited circumstances described below." There followed a list of exceptions including impersonation, trademark and copyright violations, and the misuse of others' private information. At the time, the exceptions did not include affiliation with a violent extremist group as a basis for suspension. The second paragraph of the Rules cautioned that to "make Twitter a better experience for all . . . [w]e may need to change these rules from time to time and reserve the right to do so. Please check back here [link to the webpage hosting the Rules] to see the latest."

On November 17, 2017, Twitter announced "updated . . . rules around abuse and hateful conduct as well as violence and physical harm," to be enforced "starting December 18." This update added the Violent Extremist Group Rule, which states that users "may not affiliate with organizations that—whether by their own statements or activity both on and off the platform—use or promote violence against civilians to further their causes." Real parties allege that on December 18, 2017, Twitter suspended their accounts and informed them that the accounts were permanently suspended "because the accounts were 'found to be violating . . . the Twitter Rules against being affiliated with a violent extremist group.' "

Real parties filed their original complaint on February 20, 2018. They filed a first amended complaint (FAC) on March 14, 2018. The FAC raised three claims, including a claim that Twitter had violated California's Unfair Competition Law (UCL), which prohibits "unlawful, unfair, or fraudulent business acts or practices" (Bus. & Prof. Code, § 17200), by "inserting unconscionable terms in its Terms of Service and Rules and deceptively advertising itself as a forum for free speech . . . ."

On April 24, 2018, Twitter filed a demurrer arguing that the Communications Decency Act of 1996, 47 U.S.C. § 230 (section 230) and the First Amendment barred real parties' claims. After receiving opposition and reply, respondent heard the matter on June 4, 2018, and announced its tentative ruling at that hearing. Respondent sustained petitioner's demurrer to real parties' first two causes of action but overruled it as to the

UCL cause of action, and it embodied this ruling in a brief written order filed July 10, 2018.

That same day, Twitter filed a notice of supplemental authorities in support of its demurrer. It brought to respondent court's attention the California Supreme Court's recent decision in *Hassell, supra,* 5 Cal.5th 522, which the high court had filed only a week earlier. It therefore appears that respondent may have ruled on petitioner's demurrer before it had the opportunity to consider *Hassell*.

On August 6, Twitter filed the instant petition.

Section 230(c)(1) states that "[n]o provider . . . of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." Furthermore, subsection (e)(3) of section 230 provides that "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section."

Here, there appears to be no dispute that petitioner is the "provider . . . of an interactive computer service," and federal cases have treated it as such. (§ 230(f)(2); see *Pennie v. Twitter, Inc.* (N.D. Cal. 2017) 281 F.Supp. 3d 874, 888; *Fields v. Twitter, Inc.* (N.D. Cal. 2016) 217 F.Supp.3d 1116, 1121, aff'd, 881 F.3d 739 (9th Cir. 2018).) Nor does there appear to be a dispute that real parties' postings are "information provided by another information content provider." (§ 230(c)(1), (f)(3); see *Hassell, supra,* 5 Cal.5th at p. 540.) The parties' dispute centers on whether real parties seek to impose liability on petitioner in its capacity as publisher.

" '[Section] 230 precludes courts from entertaining claims that would place a computer service provider in a publisher's role. Thus, lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions—*such as deciding whether to publish, withdraw, postpone or alter content*—are barred.' " (*Barrett v. Rosenthal* (2006) 40 Cal.4th 33, 43 (*Barrett*), quoting *Zeran v. America Online, Inc.* (4th Cir.1997) 129 F.3d 327, 330, italics added.) *Barrett* also noted that one "important purpose of section 230 was 'to encourage service providers to self-regulate the dissemination of offensive material over their services.' " (*Barrett, supra,* at p. 44.) The immunity provided by section 230 was intended to shield service providers from the fear of liability that might deter them from " 'blocking and screening offensive material . . . .' " (*Ibid.*)

In *Hassell,* the Supreme Court reviewed judicial constructions of section 230 and noted that courts have described the immunity the section confers as " 'broad' " and " 'robust.' " (*Hassell, supra,* 5 Cal.5th at p. 535.) The high court explicitly rejected the plaintiffs' efforts "to avoid section 230 through the 'creative pleading' of barred claims . . . ." (*Id.* at p. 542.) It held that section 230 immunized Yelp from liability for what it

described as "its ongoing decision to publish the challenged reviews." (*Ibid.*) The court concluded that the intent of section 230 is "to shield Internet intermediaries from the burdens associated with defending against state-law claims that treat them as the publisher or speaker of third party content, and from compelled compliance with demands for relief that, when viewed in the context of a plaintiff's allegations, similarly assign them the legal role and responsibilities of a publisher qua publisher." (*Id.* at p. 544; see also *id.* at p. 558 (conc. opn. of Kruger, J.) ["Section 230 forbids a cause of action or the imposition of liability when the effect is to impose liability for, or draw the provider into litigation to defend, its past editorial judgments (or lack thereof) in permitting third party postings."] *id.* at pp. 567-568 (dis. opn. of Cuéllar, J.) ["[S]ection 230 . . . confer[s] immunity . . . against a cause of action filed directly against the platform, seeking to hold it liable for conduct as the *publisher* of third party content."].)

Thus, we " 'must ask whether the duty that the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a "publisher or speaker." If it does, section 230(c)(1) precludes liability.' " (*Cross v. Facebook, Inc.* (2017) 14 Cal.App.5th 190, 207 (*Cross*), quoting *Barnes v. Yahoo!, Inc.* (9th Cir. 2009) 570 F.3d 1096, 1102 (*Barnes*).) We observe that California courts have held that a service provider's decision "to restrict or make available certain material—is expressly covered by section 230." *Doe II v. MySpace, Inc.* (2009) 175 Cal.App.4th 561, 573.) And federal courts have specifically ruled that a service provider's exercise of control over user accounts is immunized by section 230. (*Fields v. Twitter, Inc., supra,* 217 F.Supp.3d at p. 1124 ["[T]he decision to furnish an account, or prohibit a particular user from obtaining an account, is itself publishing activity."]; see also *Riggs v. MySpace, Inc.* (9th Cir. 2011) 444 Fed.Appx. 986, 987 [claims "arising from MySpace's decisions to delete . . . user profiles on its social networking website yet not delete other profiles . . . were precluded by section 230(c)(1) of the Communications Decency Act."]; *Cohen v. Facebook, Inc.* (E.D.N.Y. 2017) 252 F.Supp.3d 140, 157 ["Facebook's choices as to who may use its platform are inherently bound up in its decisions as to what may be said on its platform, and so liability imposed based on its failure to remove users would equally derive[] from [Facebook's] status or conduct as a "publisher or speaker." ' "]; *Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.* (N.D. Cal. 2015) 144 F.Supp.3d 1088, 1094–1095 [CDA barred claim under title II of the Civil Rights Act of 1964 (42 U.S.C. § 2000a) alleging that Facebook "was motivated solely by unlawful discrimination" in blocking access to plaintiff's Facebook page in India; claim sought "to hold Defendant liable for Defendant's decision 'whether to publish' third-party content"].) Indeed, "any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230." (*Fair Housing Council of San Fernando Valley v. Roommates.com, LLC* (9th Cir. 2008) 521 F.3d 1157, 1170-1171 (en banc).)

That real parties allege a cause of action under the UCL does not place their claim outside the scope of immunity provided by the CDA. (See *Cross, supra,* 14 Cal.App.5th at pp. 196, 208; *Caraccioli v. Facebook, Inc.* (N.D. Cal. 2016) 167 F.Supp.3d 1056, 1064.) Like the plaintiffs in *Cross,* real parties claim they are seeking to hold petitioner liable for statements or promises made in its TOS and Rules. (See *Cross, supra,* at pp. 200-201, 206-207.) But "[i]n evaluating whether a claim treats a provider as a publisher or speaker of user-generated content, 'what matters is not the name of the cause of action'; instead, what matters is whether the cause of action inherently requires the court to treat the defendant as the "publisher or speaker" of content provided by another.' " (*Id.* at p. 207, quoting *Barnes, supra,* 570 F.3d at pp. 1101–1102.) Here, the duties real parties allege Twitter violated derive from its status or conduct as publisher because petitioner's decision to suspend real parties' accounts constitutes publishing activity. (*Cohen v. Facebook, Inc., supra,* 252 F.Supp.3d at p. 157; *Fields v. Twitter, Inc., supra,* 217 F.Supp.3d at pp. 1123-1124.) As *Hassell* reiterated, "lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content—are barred.' " (*Hassell, supra,* 5 Cal.5th at p. 536.)

Therefore, let an alternative writ of mandate issue commanding respondent San Francisco County Superior Court, in *Jared Taylor, et al. v. Twitter, Inc.,* San Francisco County Superior Court case No. CGC18564460, to set aside and vacate its order of July 10, 2018 order overruling part in part petitioner's demurrer to the first amended complaint of real parties in interest, and to enter a new and different order sustaining petitioner's demurrer in its entirety; or, in the alternative, to appear and show cause before Division One of this court why a peremptory writ of mandate should not be granted.

If respondent superior court complies with this court's directive by vacating its order of July 10, 2018, and entering a new and different order sustaining petitioner's demurrer in its entirety, and does so on or before September 24, 2018, the court will dissolve the stay previously imposed, discharge the alternative writ, and dismiss the petition as moot.

Petitioner shall inform this court by letter of respondent court's decision as soon as possible. Thereafter, on or before September 26, 2018, petitioner shall serve and file in this court any new orders issued by respondent.

Should respondent court choose not to follow the above procedure, but instead to appear and show cause before this court why a peremptory writ of mandate should not issue, this matter will be heard before Division One when ordered on calendar.

The alternative writ is to be issued, served and filed on or before August 20, 2018, and shall be deemed served upon mailing by the clerk of this court of certified copies of

the alternative writ and this order to all parties in case No. A154793 and to respondent superior court.

A written return shall be served and filed on or before September 28, 2018, and a reply to the return shall be served and filed on or before October 5, 2018. (Cal. Rules of Court, rule 8.487(b).) If, however, respondent superior court complies with the alternative writ, and proof thereof is filed herein on or before that date, then no return or reply need be filed, the alternative writ will be discharged, and the petition will be dismissed as moot.

Date: AUG 1 7 2018 _____  HUMES, P.J. _____ P.J.

Before: Humes, P.J., Margulies, J., and Dondero, J.