**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| DENNIS G. LOMAX, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:19-cv-30025-KAR |
| | ) | |
| WIKIMEDIA FOUNDATION, INC. et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT WIKIMEDIA FOUNDATION, INC.'S**
**MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

BACKGROUND ........................................................................................................... 1

    A.    Wikimedia's Mission Statement and Terms of Use .................................. 1

    B.    Wikimedia's Global Ban Policy ............................................................... 3

    C.    Plaintiff's Use of Wikimedia Websites ..................................................... 3

    D.    Allegations Concerning Individual Defendants ......................................... 4

    E.    Allegations Concerning Wikimedia ........................................................... 4

PROCEDURAL HISTORY ........................................................................................... 5

LEGAL STANDARD .................................................................................................... 6

ARGUMENT ................................................................................................................ 7

    I.    PLAINTIFF FAILS TO ALLEGE ANY VIABLE CLAIM AGAINST WIKIMEDIA ......................................................................................... 7

    A.    Plaintiff fails to adequately plead defamation (Counts 1 and 2) ............... 7

    B.    Plaintiff cannot plausibly allege civil conspiracy (Count 3) .................... 11

    C.    Plaintiff fails to state any actionable claim for "Violation of Implicit Contract" (Count 4) ................................................................. 13

    II.    PLAINTIFF'S CLAIMS ARE BARRED BY STATUTORY IMMUNITY ........ 14

CONCLUSION ............................................................................................................ 19

# TABLE OF AUTHORITIES

Page

CASES

*Barnes v. Yahoo!, Inc.*,
  570 F.3d 1096 (9th Cir. 2009) ..................................................................18, 19

*Bartle v. Berry*,
  953 N.E.2d 243 (Mass. App. Ct. 2011) ...........................................................12

*Bauer, et al. v. Glatzer, et al.*,
  No. L-1169-07 (N.J. Super. Ct. July 21, 2008)...................................................16

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).......................................................................................6

*Blake v. Prof'l Coin Grading Serv.*,
  898 F. Supp. 2d 365 (D. Mass. 2012) ...............................................................12

*Caraccioli v. Facebook, Inc.*,
  700 F. App'x 588 (9th Cir. 2017) ....................................................................18

*Claudio-De Leon v. Sistema Universitario Ana G. Mendez*,
  775 F.3d 41 (1st Cir. 2014)..............................................................................6

*Cohen v. Facebook, Inc.*,
  252 F. Supp. 3d 140 (E.D.N.Y. 2017) ...............................................................17

*Delima v. YouTube, Inc.*,
  No. 18-1666, 2019 WL 1620756 (1st Cir. Apr. 3, 2019) .......................................18

*DeLima v. YouTube, LLC*,
  No. 17-cv-733-PB, 2018 WL 4473551 (D.N.H. Aug. 30, 2018)......................17, 18

*Doe v. Amherst Coll.*,
  238 F. Supp. 3d 195 (D. Mass. 2017) .......................................................8, 10, 11

*Draghetti v. Chmielewski*,
  626 N.E.2d 862 (Mass. 1994) ..........................................................................8

*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*,
  521 F.3d 1157 (9th Cir. 2008) ....................................................................15, 17

*Fields v. Twitter, Inc.*,
  217 F. Supp. 3d 1116 (N.D. Cal. 2016), *aff'd*, 881 F.3d 739 (9th Cir. 2018) .........17

*Glassman v. Computervision Corp.*,
  90 F.3d 617 (1st Cir. 1996) ................................................................................7

*Green v. Concord Baptist Church*,
  313 Fed. App'x. 335 (1st Cir. 2009) (unpublished) ...............................................7

*Hiam v. HomeAway.com, Inc.*,
  267 F. Supp. 3d 338 (D. Mass. 2017) .................................................................15

*Ironshore Specialty Ins. Co. v. United States*,
  871 F.3d 131 (1st Cir. 2017) .................................................................................2

*Klayman v. Zuckerberg*,
  753 F.3d 1354 (D.C. Cir. 2014) ..........................................................................18

*Maruho Co. v. Miles, Inc.*,
  13 F.3d 6 (1st Cir. 1993 .....................................................................................12

*Massachusetts Laborers' Health & Welfare Fund v. Philip Morris, Inc.*,
  62 F. Supp. 2d 236 (D. Mass. 1999) ...................................................................11

*Mateo v. University System of New Hampshire*,
  No. 18-cv-11953-FDS, 2019 WL 199890 (D. Mass. Jan. 14, 2019) .................9, 11

*Mezey v. Twitter, Inc.*,
  No. 18-cv-21069-KMM, 2018 WL 5306769 (S.D. Fla. July 19, 2018) ................17

*Mondol v. City of Somerville*,
  2017 WL 4845019-ADB (D. Mass. Oct. 26, 2017) ..............................................10

*Nat'l Ass'n of the Deaf v. Harvard Univ.*,
  No. 15-cv-30023-KAR, 2019 WL 1409302 (D. Mass. Mar. 28, 2019) ...........14, 18

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
  591 F.3d 250 (4th Cir. 2009) .............................................................................15

*Noonan v. Staples, Inc.*,
  556 F.3d 20 (1st Cir. 2009) ..............................................................................9, 10

*Noonan v. Staples, Inc.*,
  707 F. Supp. 2d 85 (D. Mass. 2010) .....................................................................9

*Pan Am Sys., Inc. v. Hardenbergh*,
  871 F. Supp. 2d 6 (D. Me. 2012) ..........................................................................8

*Popponesset Beach Ass'n, Inc. v. Marchillo*,
  658 N.E.2d 983 (Mass. App. Ct. 1996) ...............................................................13

*Restucci v. Clarke*,
   669 F. Supp. 2d 150 (D. Mass. 2009) ..................................................................................6

*Rodi v. S. New England Sch. Of Law*,
   389 F.3d 5 (1st Cir. 2004)..................................................................................................7

*Sarvis v. Polyvore, Inc.*,
   No. 12-cv-12233-NMG, 2013 WL 4056208 (D. Mass. Aug. 9, 2013) ..................................5

*Shay v. Walters*,
   702 F.3d 76 (1st Cir. 2012)..............................................................................................10

*Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*,
   144 F. Supp. 3d 1088 (N.D. Cal. 2015) .........................................................................15, 16

*Small Justice LLC v. Xcentric Ventures LLC*,
   873 F.3d 313 (1st Cir. 2017).............................................................................................15

*Snyder v. Collura*,
   812 F.3d 46 (1st Cir. 2016).........................................................................................11, 12

*Taylor v. Am. Chemistry Council*,
   576 F.3d 16 (1st Cir. 2009).............................................................................................12

*Thomas v. Rhode Island*,
   542 F.3d 944 (1st Cir. 2008)..............................................................................................6

*Twitter v. Superior Court for the City and County of San Francisco*,
   No. A154973 (Cal. App. 1st Aug. 17, 2018) .......................................................................16

*Wikimedia Found. v. Nat'l Sec. Agency*,
   143 F. Supp. 3d 344 (D. Md. 2015) ....................................................................................1

## STATUTES

47 U.S.C. § 230..........................................................................................................14, 15, 16

## INTRODUCTION

Plaintiff's original complaint against Defendant Wikimedia Foundation, Inc. ("Wikimedia")—the nonprofit that operates the popular website Wikipedia—consisted of four conclusory allegations, almost all of which concerned the conduct of unidentified "John Doe" defendants. Wikimedia discerned, at best, an unpled defamation claim against it for displaying Plaintiff's username as banned from publishing on Wikimedia's websites. Plaintiff, however, did not contend that he was not in fact banned and failed to plead the other requisite elements of defamation. Wikimedia moved to dismiss for failure to state a claim. *See* ECF No. 8.

In response, Plaintiff amended the complaint to add four causes of action, eight named individual defendants, and another $1.8 million in claimed damages. *See* ECF No. 16 ("Amended Complaint"). The allegations against Wikimedia, however, boil down to the same flawed theory of defamation. Plaintiff now concedes that Wikimedia made no false statement when it published the fact of the ban, and that Wikimedia has plenary discretion to ban users under its Terms of Use. But proving defamation against Wikimedia is not the purpose of his lawsuit. Indeed, Plaintiff *himself* published the fact of the ban two months after Wikimedia did. The Amended Complaint, rather, seeks to force Wikimedia to adopt Plaintiff's views on how it ought to run its websites. There is no basis for such relief. Now that Plaintiff has tried and failed twice to plead plausible allegations, Wikimedia respectfully moves under Fed. R. Civ. P. 12(b)(6) to dismiss the Amended Complaint with prejudice.

## BACKGROUND

### A.    Wikimedia's Mission Statement and Terms of Use

Wikimedia is "a non-profit organization based in San Francisco, California, that maintains twelve Internet projects—including Wikipedia—that provide free content to users around the world." *Wikimedia Found. v. Nat'l Sec. Agency*, 143 F. Supp. 3d 344, 346–47 (D. Md. 2015); *see*

Am. Compl. at 4 (Wikimedia "operates a large family of web sites . . . allowing users to collaborate in the creation of content").  Its stated mission "is to empower and engage people around the world to collect and develop content under a free license or in the public domain, and to disseminate it effectively and globally, free of charge."  *See* Declaration of Christopher M. Morrison ("Morrison Decl."), Ex. A at 2 (Terms of Use).[1]  In furtherance of this goal, Wikimedia "provide[s] the essential infrastructure and organizational framework for the development" of web projects by its community of users.  *Id.*  The community of Wikimedia website users is "the principal means through which the goals of [Wikimedia's] mission are achieved."  *Id.*  The Wikimedia user community "contributes to and helps govern [Wikimedia] sites," and "undertakes the critical function of creating and enforcing policies for the specific [Wikimedia] [p]roject editions."  *Id.*  Wikimedia users in turn agree to comply with policies and final decisions established by the community.  *Id.* at 3, 9.

In certain instances, however, Wikimedia may intervene with respect to website policy or enforcement.  *Id.* at 9-10.  Wikimedia expressly "reserve[s] the right to suspend or end [Wikimedia's] services at any time, with or without cause, and with or without notice."  *Id.* at 10; *see also id.* at 4-6, 9; Am. Compl. at 4.  Indeed, Plaintiff concedes that Wikimedia's Terms of Use "do *properly* allow it to terminate service without cause."  *See* Am. Compl. ¶ 69 (emphasis added).

---

[1] At the motion to dismiss stage, the Court may consider Wikimedia's Terms of Use and, as discussed below, its WMF Global Ban Policy, which are publicly available and central to Plaintiff's Amended Complaint.  *See, e.g.*, Am. Compl. at 4-5.  *See also Ironshore Specialty Ins. Co. v. United States*, 871 F.3d 131, 135 (1st Cir. 2017) (when reviewing 12(b)(6) motion to dismiss, court may consider "documents the authenticity of which are not disputed by the parties; . . . official public records; . . . documents central to plaintiff['s] claim; . . . documents sufficiently referred to in the complaint," or documents that the factual allegations are expressly linked to or dependent upon (citations omitted)).

### B.      Wikimedia's Global Ban Policy

Plaintiff describes various "blocks," "locks," and "community ban[s]" that may be imposed to limit certain uses of Wikimedia's websites.  *See* Am. Compl. at 4-5.  The only action at issue here is what Plaintiff calls an "office ban," also known as a "Foundation global ban," which is imposed by Wikimedia itself, as opposed to the user community.  *See id.* at 5.

According to Plaintiff, *see id.* at 5, Wikimedia instituted in 2015 the "WMF Global Ban Policy," a copy of which is made publicly available to "aid in transparency and understanding." *See* Morrison Decl., Ex. B at 2 (WMF Global Ban Policy).  The WMF Global Ban Policy provides that, "pursuant to [Wikimedia's] Terms of Use," Wikimedia may prohibit individuals "from all editing or other access privileges in [Wikimedia] websites, platforms and activities." *Id.* at 1-2.  It includes a non-exhaustive list of activities that may lead to a Foundation global ban, *e.g.*, repeated Terms of Use violations or significant harassment of users.  *Id.* at 3.  According to the policy, when a Foundation global ban takes effect, Wikimedia adds the individual's username to a visible list of globally banned accounts.  *Id.* at 3-4.   But "to protect the privacy of all parties involved, [Wikimedia] generally will not publicly or privately comment on the reason for any specific banning action." *Id.* at 5.  Foundation global bans are "final" and "not appealable." *Id.* at 4.

### C.      Plaintiff's Use of Wikimedia Websites

Plaintiff became a registered user of Wikipedia in 2005.  Am. Compl. ¶ 1.  By 2009, Plaintiff also became known as a critic of how Wikimedia's websites should be operated, and engaged in disputes with Wikimedia users concerning his views on website administration.  *Id.* ¶¶ 1-2.  For a time, he also collected information on another Wikimedia website, Wikiversity, related to the study of an emerging science referred to as cold fusion.  *Id.* ¶¶ 3, 5.  At some point, Plaintiff moved his cold fusion work from Wikiversity to Meta, another Wikimedia web project.

*Id.* at 4, ¶ 10.  He then moved all study or materials concerning cold fusion to his personal blog. *Id.* ¶ 13.

### D.    Allegations Concerning Individual Defendants

According to Plaintiff, several individual defendants have opposed his views by portraying cold fusion as pseudoscientific.  Am. Compl. ¶ 4.  On September 30, 2017, Defendant Darryl Smith expressed intent to have Plaintiff's Wikiversity materials deleted, and on October 5, 2017, wrote an allegedly defamatory article about Plaintiff on the website RationalWiki (which has no affiliation with Wikimedia).  *Id.* ¶¶ 11-12.  Darryl Smith allegedly invited Defendant Schroeder to participate in seeking to have Plaintiff banned on Wikiversity.  *Id.* ¶ 15.  Defendant Chapman allegedly requested that the cold fusion resource be deleted from Wikiversity.  *Id.* ¶¶ 16-18.

Plaintiff sought an administrative response from the user community regarding the conduct of Darryl Smith and others.  *Id.* ¶ 22.  In response, Defendant Umbrecht, a Wikiversity user with administrative privileges pursuant to community policy, stated that due to staff needs and the number of contentious exchanges among users, the cold fusion resource would be closed after a reasonable amount of time to allow interested persons to archive the material.  *See id.* at 3, ¶ 24, n.33.  On December 23, 2017, Defendant Umbrecht stated that Plaintiff had previously been warned that excessive use of "checkuser requests" (seeking to identify the internet address associated with a Wikimedia account) could result in a block.  *Id.* ¶ 25, n.35.  On December 31, 2017, Defendant Umbrecht imposed on Plaintiff an indefinite community block from Wikiversity. *Id.* ¶¶ 26-27.  After waiting until January 14, 2018, Defendant Umbrecht allegedly deleted Wikiversity pages created by Plaintiff.  *Id.* ¶ 31, n.42.

### E.    Allegations Concerning Wikimedia

Plaintiff alleges that several individual defendants filed complaints with Wikimedia concerning him.  Am. Compl. ¶ 34.  On February 24, 2018, Defendant Alexander, who at the time was an employee of Wikimedia, implemented Wikimedia's policy and imposed the Foundation global ban of Plaintiff.  *See id*. at 3, 6, ¶ 37.  Plaintiff's Wikimedia username, "Abd," with no other identifying information, was then added to Wikimedia's publicly available list of 36 banned user

4

accounts.  *Id.* at 6.  Two months later, Plaintiff *himself* published on his cold fusion blog that he

was banned by Wikimedia.  *See* Morrison Decl., Ex. C at 2 ("Cold Fusion Community" blogpost

dated April 2018).[2]  Defendants Darryl Smith and Oliver Smith allegedly used the "fact" of the

ban to "strengthen their [defamatory] and malicious claims."  *Id.* ¶¶ 39-40.  Plaintiff now alleges

that Defendant Alexander acted "with malice" in carrying out the ban as part of his employment

duties, and given that Wikimedia allegedly has a history of banning users for criticizing

"Wikipedia administration," Wikimedia "may have" acted with malice.  Am. Compl. ¶ 36.

## PROCEDURAL HISTORY

Plaintiff filed the original complaint on February 25, 2019.  *See* ECF No. 1.  Following

Wikimedia's initial motion to dismiss, Plaintiff amended his complaint as of right.  *See* Fed. R.

Civ. P. 15(a).  The Amended Complaint names eight individual defendants, none of whom appear

to have been served at this time.  *See* Am. Compl. at 2-3.  Defendant Alexander is the only alleged

employee or former employee of Wikimedia.[3]  *Id.* at 3.  The other individual defendants are

allegedly current or former Wikimedia website users.  *Id.* at 2-3.  Their alleged locations include

Italy, the United Kingdom, California, New York, and Rhode Island.[4]  *Id.*

---

[2] Plaintiff references his blog in the Amended Complaint, *see* Am. Compl. ¶ 13, and provides direct hyperlinks to it in support of his allegations.  *See id.* at 6 n.1, ¶ 40.  *See generally Sarvis v. Polyvore, Inc.*, No. 12-cv-12233-NMG, 2013 WL 4056208, at *3 (D. Mass. Aug. 9, 2013) ("[F]or purposes of a 12(b)(6) motion to dismiss, a court may take judicial notice of information publicly announced on a party's website, as long as the website's authenticity is not in dispute and 'it is capable of accurate and ready determination.'" (citation omitted)).

[3] The only allegations against Defendant Alexander are that he is a former employee of Wikimedia and that he carried out the Foundation global ban against Plaintiff.  *See* Am. Compl. at 2-3, ¶ 37. Plaintiff only alleges that Defendant Alexander acted in his capacity as a Wikimedia employee. *See id.* ¶ 63 (alleging "[Wikimedia] is responsible for the actions of Alexander").  On the face of the Amended Complaint, there is no basis for naming Alexander as a defendant, given the paucity of allegations against him and that Plaintiff solely seeks to hold Wikimedia liable for Alexander's actions in his capacity as a Wikimedia employee.

[4] To the extent Plaintiff's claims against Wikimedia are not dismissed, Wikimedia reserves the right to move to dismiss or transfer this case to the Northern District of California pursuant to

The Amended Complaint asserts four causes of action: defamation against all defendants (Count 1); defamation against Wikimedia (Count 2); civil conspiracy against all defendants (Count 3); and "violation of implicit contract" against Wikimedia (Count 4).  *See* Am. Compl. ¶¶ 49-73. Plaintiff seeks, *inter alia*, $2 million in damages, up from $200,000 claimed in the original complaint.  *Id.* at 19; *see* ECF No. 1.  He further asks the Court to order Wikimedia to rescind the ban, establish an appeal process for bans, and remove publication of all banned accounts absent user consent.  Am. Compl. at 15, 18.

## LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim, a complaint must assert sufficient facts to "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see Restucci v. Clarke*, 669 F. Supp. 2d 150, 154 (D. Mass. 2009) (allowing in part motion to dismiss *pro se* complaint).  While "detailed factual allegations" are not required, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions."  *Twombly*, 550 U.S. at 555; *see Thomas v. Rhode Island*, 542 F.3d 944, 948 (1st Cir. 2008).  Although a *pro se* complaint is held to a less stringent standard than pleadings drafted by lawyers, this Court should "not 'conjure up unpled allegations' . . . to state an actionable claim."  *Restucci*, 669 F. Supp. 2d at 155 (quoting *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979)).  *Pro se* plaintiffs "must still comply with procedural and substantive rules of law."  *Id.* (citing *Ahmed v. Rosenblatt*, 118 F.3d 886, 890 (1st Cir. 1997)).

---

Wikimedia's Terms of Use.  *See Claudio-De Leon v. Sistema Universitario Ana G. Mendez*, 775 F.3d 41, 46, 49 (1st Cir. 2014) (courts in the First Circuit "treat a motion to dismiss based on a forum selection clause as a motion alleging the failure to state a claim for which relief can be granted under Rule 12(b)(6)," and such a motion "may be raised at any time in the proceedings before disposition on the merits").  Whether Wikimedia seeks dismissal or transfer pursuant to its Terms of Use may depend in part upon whether Plaintiff succeeds in bringing the individual defendants into this action, none of whom have been served at this time and may be subject to several jurisdictional bars.  Wikimedia also may consider, at that time, joining or otherwise supporting the arguments of the individual defendants.

Plaintiff's claims are subject to dismissal with prejudice.  Although courts "guard against the loss of pro se claims due to technical defects," Plaintiff's claims against Wikimedia have no potential for success on the merits.  *Rodi v. S. New England Sch. Of Law*, 389 F.3d 5, 20 (1st Cir. 2004) (citation omitted).  The Court may dismiss a *pro se* complaint, even *sua sponte*, "where it is 'crystal clear that the plaintiff cannot prevail and that amending the complaint would be futile[.]'" *Green v. Concord Baptist Church*, 313 Fed. App'x. 335, 336 (1st Cir. 2009) (unpublished) (citation omitted).   "In reviewing for 'futility,' the district court applies the same standard of legal sufficiency as applies to a Rule 12(b)(6) motion."  *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996).  Plaintiff has now amended his complaint in response to Wikimedia's initial motion to dismiss.  Having put forth his best effort at stating a claim, it is clear Plaintiff does not have one.

## ARGUMENT

### I.   PLAINTIFF FAILS TO ALLEGE ANY VIABLE CLAIM AGAINST WIKIMEDIA

Even when liberally construed, the Amended Complaint states no cognizable claim against Wikimedia.  Most of Plaintiff's new allegations do not concern Wikimedia at all, and each claim against Wikimedia—defamation (Counts 1 and 2), civil conspiracy (Count 3), and violation of implicit contract (Count 4)—solely arises out of the Foundation global ban or its publication. Plaintiff has not plausibly alleged a cause of action based on either.

#### A.   Plaintiff fails to adequately plead defamation (Counts 1 and 2)

Despite introducing a plethora of new allegations, Plaintiff's only assertion concerning Wikimedia remains that it published—by identifying his Wikimedia username—that it banned him from posting content on Wikimedia's websites.  Plaintiff's defamation claims (Count 1 and 2) are duplicative of each other, and as in the original complaint, deficiently pled.

To bring a claim for defamation under Massachusetts law, Plaintiff must plausibly plead the following elements: "(1) that the defendant published a written statement; (2) of and concerning the plaintiff; that was both (3) defamatory, and (4) false; and (5) either caused

economic loss, or is actionable without proof of economic loss." *Doe v. Amherst Coll.*, 238 F. Supp. 3d 195, 225-26 (D. Mass. 2017) (quoting *Noonan v. Staples, Inc.*, 556 F.3d 20, 25 (1st Cir. 2009)).

As an initial matter, Plaintiff does not allege that any statement by Wikimedia was defamatory; there is no allegation that Wikimedia published the reason for the ban, or any information other than his chosen Wikimedia username. *See, e.g.*, *Pan Am Sys., Inc. v. Hardenbergh*, 871 F. Supp. 2d 6, 16 (D. Me. 2012) (under Maine law, "a statement that an individual is fired, without providing defamatory reasons for the firing, is not defamatory").

Despite seeking $2 million in damages, he also fails to adequately plead economic loss or other actual damages caused by Wikimedia. *See Draghetti v. Chmielewski*, 626 N.E.2d 862, 868 (Mass. 1994) ("Damages in a defamation case are limited to actual damages, which are compensatory for the wrong that has been done."). There are no allegations of actual damages in support of Count 2. S*ee* Am. Compl. ¶¶ 49-56. Content hosted on Wikimedia's websites is available to the public free of charge, and at the time of the ban, Plaintiff had already moved his alleged journalistic work to his personal blog. S*ee id.* ¶ 13.[5] Any allegations supporting Count 1 are directed entirely toward the individual defendants. *See id.* ¶¶ 41-48. To the extent he includes Wikimedia therein, he merely states the ban "caused harm to his reputation" as a journalist. *Id.* ¶ 47. That Plaintiff *himself* published the fact of the ban just two months after Wikimedia confirms the *de minimis* impact of Wikimedia's publication. *See* Morrison Decl., Ex. C at 2. Plaintiff's allegations that *other individuals* made allegedly harmful statements that referenced the ban does

---

[5] Wikimedia's Terms of Use also provide, "You understand that, unless otherwise agreed to in writing by us, you have no expectation of compensation for any activity, contribution, or idea that you provide to us, the community, or the Wikimedia Projects or Project editions." Morrison Decl., Ex. A at 13.

not plausibly suggest *Wikimedia* caused any actual damages.  *See* Am. Compl. ¶¶ 45-48.  *Cf.*

*Noonan*, 556 F.3d at 27 (rejecting theory that "an objectively true statement can give rise to a libel

claim if reasonable readers might infer from it other, untrue characteristics of the plaintiff or

conduct by him").

Even if Plaintiff had cured these deficiencies in amending his complaint, the failure to

allege Wikimedia made a false statement is fatal.  *See Noonan v. Staples, Inc.*, 707 F. Supp. 2d 85,

90 (D. Mass. 2010) ("The lodestar of Massachusetts defamation law is the axiom that truth is an

absolute defense to defamation.").  In *Mateo v. University System of New Hampshire*, the court

dismissed a defamation claim for failure to plead falsity.  No. 18-cv-11953-FDS, 2019 WL

199890, at *7-8 (D. Mass. Jan. 14, 2019).  *Mateo* involved a former law student who withdrew

from enrollment while under investigation for violating the school's conduct code.  *Id.* at *1.  When

plaintiff sought to transfer or enroll elsewhere, his former school sent letters to other law schools

concerning plaintiff's current standing, stating that he was ineligible to return to his former school

until the pending conduct-code charge was resolved.  *Id.* at *1-2.  The court recognized that while

plaintiff disputed the validity of the underlying conduct-code charge and resulting disciplinary

actions, he "[did] not allege that the letters of current standing . . . were inaccurate descriptions of

his current standing at the school."  *Id.* at *7.  Accordingly, the court held that "the complaint fails

to allege that defendants published statements about [plaintiff] that were false."  *Id.* at *7-8.

Here, Plaintiff concedes the "fact" of the ban is true, and that Wikimedia "properly" can

ban any user without cause under its Terms of Use.[6]  *See* Am. Compl. ¶¶ 37, 39-40, 69.  As in

---

[6] Wikimedia in no way means to suggest that Plaintiff was banned without reason, but refrains
from introducing facts that are outside the scope of the Amended Complaint and the materials cited
or referenced therein.  Such information is unnecessary for dismissal of the claims against
Wikimedia.

*Mateo*, Plaintiff at most contests the validity of the ban by suggesting obliquely that it was the result of wrongdoing by certain individuals who induced Wikimedia to ban him.  *See* Am. Compl. ¶¶ 34-35.  Absent even a colorable allegation of falsity, Plaintiff fails to plead the elements of defamation, and Wikimedia has an absolute defense.  *See Amherst Coll.*, 238 F. Supp. 3d at 227 (allowing defendants' motion for judgment on the pleadings as to defamation claims, where school sent campus-wide email stating plaintiff was found in violation of school's sexual misconduct policy and expelled, because "the email accurately stated what had occurred"); s*ee also Noonan*, 556 F.3d at 28 (no defamation claim, without proving actual malice, where company truthfully stated that it fired plaintiff after investigation determined him to be out of compliance with company policy).

Massachusetts law recognizes a "narrow exception" to failing to plead falsity where plaintiff can show that the defendant acted with "actual malice" in publishing a truthful statement. *Mondol v. City of Somerville*, 2017 WL 4845019-ADB, at *12 (D. Mass. Oct. 26, 2017), *aff'd*, 746 Fed. Appx. 35 (2018).  Actual malice in this context means "ill will" or "malevolent intent."  *Id.* Presumably in response to Wikimedia's initial motion, Plaintiff now includes the phrase "with malice" when addressing the publication of the ban.  *See* Am. Compl. ¶ 37.  But merely stating a legal conclusion does not satisfy the pleading standard.  *See Shay v. Walters*, 702 F.3d 76, 82-83 (1st Cir. 2012) ("While the plaintiff's complaint contains conclusory allegations about 'ill-will' and 'actual malice,' it contains no factual assertions that in any way lend plausibility to these conclusions . . . .  In determining whether allegations cross the plausibility threshold, an inquiring court need not give weight to bare conclusions, unembellished by pertinent facts.").

Here, Plaintiff at most suggests Wikimedia "may have" acted with malice because Wikimedia allegedly banned other users in the past for critiquing its website administration.  Am.

Compl. ¶ 36.   This lone allegation concerning *imposing* bans on *other users* is irrelevant to Wikimedia's intent in *publishing* the *Plaintiff's* username.   Further, Wikimedia published no more than that Plaintiff's username was banned, and made no statement regarding the reasons for it. There simply is nothing to suggest that Wikimedia acted with malevolent intent or ill will.   *See Mateo*, 2019 WL 199890, at *7 (dismissing defamation claim where plaintiff failed to allege that published statements "were true but sent with actual malice"); *Amherst Coll.*, 238 F. Supp. 3d at 227 (no defamation claim based on truthful statement where plaintiff failed to plead facts "directly suggesting, or from which the court could infer" ill will).   If anything, Plaintiff's new allegations show that Wikimedia published the ban in accordance with the long-standing, publicly available WMF Global Ban Policy that provides notice that such bans will be disclosed.   *See* Morrison Decl., Ex. B at 3-4.   Thus, there was nothing specific published about Plaintiff, and nothing unique about publishing the ban.   Plaintiff's defamation claims against Wikimedia fail for lack of falsity or plausible allegations of malice, and should be dismissed with prejudice.

### B.    Plaintiff cannot plausibly allege civil conspiracy (Count 3)

Plaintiff's failure to plead defamation forecloses his civil conspiracy claim.   Even if he had alleged an underlying tort, he fails to plead other necessary elements for civil conspiracy.

"Massachusetts law appears to recognize two variants of a cause of action for 'civil conspiracy.'" *Massachusetts Laborers' Health & Welfare Fund v. Philip Morris, Inc.*, 62 F. Supp. 2d 236, 244 (D. Mass. 1999).   "The first, sometimes called 'true conspiracy,' is a 'rare,' and 'very limited' cause of action."   *Id.* (citations omitted).   "The plaintiff must allege and prove that by 'mere force of numbers acting in unison' the defendants exercised 'some peculiar power of coercion of the plaintiff which any individual standing in a like relation to the plaintiff would not have had.'"   *Id.* (citation omitted) (noting this version of civil conspiracy has "applied principally to remedy direct economic coercion"); *see Snyder v. Collura*, 812 F.3d 46, 52 (1st Cir. 2016) ("Collusive behavior among market competitors is a good example of one of those rare instances

in which it is the act of agreeing that constitutes the wrong."). Plaintiff has not alleged any coercion or that Wikimedia and other defendants had any peculiar power of him. *See Blake v. Prof'l Coin Grading Serv.*, 898 F. Supp. 2d 365, 391 (D. Mass. 2012) (no true conspiracy claim absent allegations of "coercion").

Plaintiff's claim sounds in the second variety of civil conspiracy, which "is a form of vicarious liability that requires an underlying tort." *Id.* at 391-92; *see Snyder*, 812 F.3d at 52. Plaintiff must "show an underlying tortious act in which two more persons acted in concert and in furtherance of a common design or agreement." *Bartle v. Berry*, 953 N.E.2d 243, 253 (Mass. App. Ct. 2011). *See Maruho Co. v. Miles, Inc.*, 13 F.3d 6, 10 (1st Cir. 1993) ("Massachusetts courts have held that a defendant acts 'in concert' with a tortfeasor only if the defendant 'agrees' to work toward the unlawful result." (citation omitted)). This type of civil conspiracy also may involve a defendant providing "'substantial assistance or encouragement' to a party engaging in tortious conduct," if done with "knowledge that the other's conduct is tortious, and an intent to substantially assist or encourage that conduct." *Taylor v. Am. Chemistry Council*, 576 F.3d 16, 35 (1st Cir. 2009 (citation omitted)).

Here, Plaintiff has not alleged an underlying tort. For the reasons stated above, publication of the ban does not constitute defamation. *See* Part I.A, *supra*. Plaintiff therefore cannot proceed with a civil conspiracy claim deriving therefrom. *See Blake*, 898 F. Supp. 2d at 392 (D. Mass. 2012) ("Having dismissed [plaintiff's] conversion count because this Court does not recognize the conversion of intangible property, [plaintiff] does not ascribe any tortious conduct to [defendant].").

To the extent he seeks to join Wikimedia with some allegedly tortious conduct of the individual defendants, Plaintiff does not plead an underlying tort, concerted action, or substantial assistance. Plaintiff claims that certain individual defendants conspired to file complaints with Wikimedia, but there are no allegations as to the content of those complaints, or how they might constitute defamation. Even if Plaintiff had plausibly alleged defamation based on the complaints, Plaintiff does not plead that Wikimedia agreed to participate in the tortious conduct of the

individual defendants.  In fact, he alleges the opposite—that Wikimedia failed to investigate these complaints, not that it knowingly participated in their making.  *See* Am. Compl. ¶ 35.  No reasonable inference of concerted action or substantial assistance, with intent to commit defamation, can be drawn from Plaintiff's conclusory assertion that Wikimedia joined by "issuing a ban." *See id.* ¶ 62.  Plaintiff therefore has no viable claim for civil conspiracy against Wikimedia, and it should be dismissed with prejudice.

### C.  Plaintiff fails to state any actionable claim for "Violation of Implicit Contract" (Count 4)

The remaining claim—"violation of implicit contract"—is not a cause of action.  Plaintiff appears to assert a claim for breach of an implied contract based on Wikimedia's Terms of Use or course of conduct.  *See* Am. Compl. ¶ 65.  He essentially claims that Wikimedia has an obligation to allow him to appeal the Foundation global ban.  *Id.*  No matter how liberally construed, the Amended Complaint fails to allege any contract-based claim.

"An implied-in-fact contract comes into being when, notwithstanding the *absence* of a written agreement or verbal agreement expressing mutual obligations, the conduct or relations of the parties imply the existence of a contract." *Popponesset Beach Ass'n, Inc. v. Marchillo*, 658 N.E.2d 983, 987 (Mass. App. Ct. 1996) (emphasis added).  Plaintiff's allegations make clear that Wikimedia's Terms of Use govern the user-provider relationship between him and Wikimedia.  *See, e.g.*, Am. Compl. at 4, ¶¶ 56, 66, 69.  He also acknowledges that the WMF Global Ban Policy has been in effect since 2015, and concedes that Wikimedia's decision to implement a global ban process "was reasonable." *Id.* at 5, ¶ 68.  Because Plaintiff cannot identify any contractual duty in Wikimedia's Terms of Use that conceivably could have been breached, he seeks to create an implied duty.  *See id.* ¶¶ 65, 69.  But he cannot assert the existence of an implied contract to rewrite the Terms of Use.

Even if the parties' course of conduct were relevant, the Amended Complaint contains no allegations that plausibly suggest that Wikimedia had a duty to allow an appeal of a Foundation global ban. Plaintiff's argument rests solely on the existence of a separate process and policy for the *user community* to implement bans. *Id.* ¶¶ 70-73. The policies concerning community bans are irrelevant to Foundation global bans, and nothing in the Amended Complaint suggests otherwise. Wikimedia's Terms of Use provide plenary discretion for Wikimedia to terminate user services, "at any time, with or without cause, and with or without notice." Morrison Decl., Ex. A at 11. The WMF Global Ban Policy expressly states that a Foundation global ban is not appealable. Morrison Decl., Ex. B at 4. And that policy further says that it "supplements, without replacing, the community global ban process." Morrison Decl. Ex. B at 1. Thus, Plaintiff lacks any plausible basis to assert Wikimedia's conduct or the community's policies created a contractual duty or obligation to provide an appeal of a Foundation global ban. Plaintiff merely thinks that Wikimedia *should* provide an appeal process for Foundation global bans, but that is no basis for any cause of action. Count 4 should be dismissed with prejudice.

## II.   PLAINTIFF'S CLAIMS ARE BARRED BY STATUTORY IMMUNITY

To the extent Plaintiff is attempting to hold Wikimedia liable for instituting the ban itself (separate from its publication), Plaintiff's claims are barred by Section 230 of the Communications Decency Act ("CDA"). 47 U.S.C. § 230(c)(1).[7] He thus has no basis for seeking injunctive relief

---

[7] "Preemption under the [CDA] is an affirmative defense, but it can still support a motion to dismiss if the statute's barrier to suit is evident from the face of the complaint." *Nat'l Ass'n of the Deaf v. Harvard Univ.*, No. 15-cv-30023-KAR, 2019 WL 1409302, at *12 (D. Mass. Mar. 28, 2019) (quoting *Klayman v. Zuckerberg*, 753 F.3d 1354, 1357 (D.C. Cir. 2014)). For the reasons stated herein, Wikimedia's immunity under Section 230 is "definitively ascertainable from the complaint and other allowable sources of information" and able to be established "with certitude." *Id.* (citations omitted). Moreover, Plaintiff filed the Amended Complaint after Wikimedia raised its Section 230 immunity defense, and added allegations that only make Section 230's applicability more apparent.

to force Wikimedia to rescind the ban, unlock his account, or institute his preferred policies concerning who may publish on Wikimedia's websites. *See* Am. Compl. at 15, 18.

Section 230 of the CDA provides "broad immunity to entities . . . that facilitate the speech of others on the Internet." *Hiam v. HomeAway.com, Inc.*, 267 F. Supp. 3d 338, 345–46 (D. Mass. 2017), *aff'd*, 887 F.3d 542 (1st Cir. 2018) (quoting *Univ. Commc'n Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413, 415 (1st Cir. 2007)); *see Small Justice LLC v. Xcentric Ventures LLC*, 873 F.3d 313, 322 (1st Cir. 2017) ("[I]mmunity under § 230 should be 'broadly construed.'" (citation omitted)). To give effect to this purpose, Section 230 provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider," 47 U.S.C. § 230(c)(1), and "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section," *id.* § 230(e)(3).  The CDA, therefore, precludes state law claims where three criteria are met: "(1) [the entity] is a 'provider or user of an interactive computer service'; (2) the claim is based on 'information provided by another information content provider'; and (3) the claim would treat [the entity] 'as the publisher or speaker' of that information." *Hiam*, 267 F. Supp. 3d at 346 (quoting *Lycos*, 478 F.3d at 418).  Where Section 230 immunity applies, dismissal with prejudice is appropriate. *See, e.g.*, *Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1096 (N.D. Cal. 2015), *aff'd*, 697 F. App'x 526 (9th Cir. 2017) (refusing to grant leave to amend claims barred by the CDA).[8]

---

[8] *See Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 254 (4th Cir. 2009) ("Section 230 immunity, like other forms of immunity, is generally accorded effect at the first logical point in the litigation process."); *see also Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1175 (9th Cir. 2008) ("[S]ection 230 must be interpreted to protect websites not merely from ultimate liability, but from having to fight costly and protracted legal battles.").

Wikimedia satisfies the elements for Section 230 immunity.  First, Wikimedia squarely falls within the meaning of a provider or user of an "interactive computer service" under the statute's broad definition of that term.  *See* 47 U.S.C. § 230(f) ("any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server").  Plaintiff acknowledges that Wikimedia "operates a large family of web sites." Am. Compl. at 4.  At least one court has already held that Wikimedia meets this requirement and qualifies for Section 230 protection.  *See* Morrison Decl., Ex. D (*Bauer, et al. v. Glatzer, et al.*, No. L-1169-07 (N.J. Super. Ct. July 21, 2008)) ("[D]efendant Wikimedia is a provider and user of an 'interactive computer service' and is therefore immune from all claims asserted against it in the [complaint] which rely upon alleged publication of information provided by another 'information content provider' as those terms are defined by 47 U.S.C. § 230(f).").  As the operator of Wikipedia and other internet-based projects, Wikimedia is plainly a provider and user of an interactive computer service under Section 230.

Second, any of Plaintiff's potential claims concern "information provided by another information content provider," namely Plaintiff himself.  "Information content provider" means "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service."  47 U.S.C. § 230(f)(3).  To the extent Plaintiff challenges the imposition of the ban, he challenges Wikimedia's decision to restrict his ability to create content on Wikipedia or other Wikimedia platforms.  *See* Morrison Decl., Ex. D; *Sikhs for Justice*, 144 F. Supp. 3d at 1094 (creator of a Facebook page that Facebook allegedly blocked was the "information content provider" for purposes of CDA immunity); Morrison Decl., Ex. E at 195, *Twitter v. Superior Court for the City and County of San Francisco*, No. A154973 (Cal. App. 1st Aug. 17, 2018) (where Twitter

permanently banned user, no dispute among parties that user's postings on Twitter constituted information provided by another information content provider).[9]

Third, any potential claims arising out of the ban itself treat Wikimedia as the publisher of third-party content. "[F]ederal courts have specifically ruled that a service provider's exercise of control over user accounts is immunized by Section 230." Morrison Decl., Ex. E at 196; *see, e.g.*, *Mezey v. Twitter, Inc.*, No. 18-cv-21069-KMM, 2018 WL 5306769, at *1 (S.D. Fla. July 19, 2018) (dismissing with prejudice plaintiff's lawsuit "under various theories of liability alleging that Defendant unlawfully suspended his Twitter account" on grounds of Section 230 immunity). "[T]he decision to furnish an account, or prohibit a particular user from obtaining an account, is itself publishing activity." *Fields v. Twitter, Inc.*, 217 F. Supp. 3d 1116, 1124 (N.D. Cal. 2016), *aff'd*, 881 F.3d 739 (9th Cir. 2018). In short, "any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230." *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1170–71 (9th Cir. 2008). That includes restricting a third-party user's ability to publish content on that website.

Recently, in *DeLima v. YouTube, LLC*, No. 17-cv-733-PB, 2018 WL 4473551, at *2 (D.N.H. Aug. 30, 2018), an individual filed a lawsuit against Google, YouTube, Twitter, and other websites arising out of her use of the defendants' websites. She sought to hold defendants liable because they "closed or shut down [her] accounts" and "locked plaintiff out of her accounts." *Id.*

---

[9] *See also Fields v. Twitter, Inc.*, 217 F. Supp. 3d 1116, 1124 (N.D. Cal. 2016), *aff'd*, 881 F.3d 739 (9th Cir. 2018) (noting that plaintiffs' claims concerning "blocking Twitter accounts instead of particular tweets" were still based on Twitter's status or conduct as a publisher of third-party content); *Cohen v. Facebook, Inc.*, 252 F. Supp. 3d 140, 157 (E.D.N.Y. 2017) ("Facebook's choices as to who may use its platform are inherently bound up in its decisions as to what may be said on its platform, and so liability imposed based on its failure to remove users would equally 'derive[ ] from [Facebook's] status or conduct as a 'publisher or speaker.'").

at *3.  Magistrate Judge Andrea K. Johnstone determined that such allegations "describe conduct that constitutes the 'exercise of a publisher's traditional editorial functions – such as deciding whether to publish, withdraw, postpone or alter content,' for which the CDA immunizes the defendant interactive computer service providers." *Id.* at *7 (quoting *Hiam*, 267 F.Supp.3d at 346).  The district court adopted the Magistrate Judge's Report and Recommendation that the lawsuit be dismissed, *DeLima v. YouTube Inc*, 2018 WL 4471721 (D.N.H. Sept. 18, 2018), and in April, the First Circuit affirmed the judgment "essentially for the reasons discussed in Magistrate Judge Johnstone's Report and Recommendation."  *Delima v. YouTube, Inc.*, No. 18-1666, 2019 WL 1620756 (1st Cir. Apr. 3, 2019).  Here, Plaintiff's claims concerning the ban itself, while either nonexistent or deficiently pled, likewise come within Section 230's broad immunity.

Plaintiff's claims and requests for relief concerning the ban cannot be cured with leave to amend.  The question of whether Section 230 immunity applies does not depend on the form of the asserted cause of action; rather, "what matters is whether the cause of action inherently requires the court to treat the defendant as the 'publisher or speaker' of content provided by another." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1101-02 (9th Cir. 2009).  If the "duty that the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a 'publisher or speaker,'" then "[S]ection 230(c)(1) precludes liability."  *Id.*; *see Nat'l Ass'n of the Deaf v. Harvard Univ.*, No. 15-cv-30023-KAR, 2019 WL 1409302, at *12 (D. Mass. Mar. 28, 2019).  Any claim asserted by Plaintiff would treat Wikimedia as a publisher of content provided by another, and would be barred by Section 230.[10]

---

[10] Plaintiff has not pleaded any claim seeking to hold Wikimedia liable for the allegedly defamatory statements of Wikimedia users, but such claims are similarly barred by Section 230. *See Klayman v. Zuckerberg*, 753 F.3d 1354, 1357-58 (D.C. Cir. 2014) (affirming dismissal of lawsuit brought by user for Facebook's failure to timely remove allegedly offensive content posted by other users); *Caraccioli v. Facebook, Inc.*, 700 F. App'x 588, 590 (9th Cir. 2017) (affirming

## **CONCLUSION**

For the reasons set forth above, the Court should dismiss all claims against Wikimedia in the Amended Complaint with prejudice.

Dated: July 1, 2019       Respectfully submitted,

              WIKIMEDIA FOUNDATION, INC.,

              By its attorneys,

              */s/* Christopher M. Morrison

              Christopher M. Morrison (BBO #651335)
              Erik N. Doughty (BBO #691487)
              JONES DAY
              100 High Street, 21st Floor
              Boston, MA 02110
              Telephone: (617) 960-3939
              Facsimile: (617) 449-6999
              cmorrison@jonesday.com
              edoughty@jonesday.com

              *Attorneys for Defendant Wikimedia Foundation, Inc.*

---

dismissal of defamation and other claims on Section 230 grounds "because the basis for each of these claims is Facebook's role as a 'republisher' of material posted by a third party"); *see generally Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1101 (9th Cir. 2009) ("The cause of action most frequently associated with the cases on section 230 is defamation.").

## <u>CERTIFICATE OF SERVICE</u>

I, Christopher M. Morrison, hereby certify that I caused a true copy of the foregoing Memorandum of Law in Support of Defendant Wikimedia Foundation, Inc.'s Motion to Dismiss Plaintiff's Amended Complaint to be served through the ECF system on all parties registered to receive ECF notices in this case, and to Plaintiff via first class mail, postage prepaid.

Dated: July 1, 2019                           */s/* Christopher M. Morrison
Boston, Massachusetts                         Christopher M. Morrison