# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

DENNIS G. LOMAX, pro se

    Plaintiff ) CASE NUMBER 3:19-cv-30025-MGM
)
    v. ) **PLAINTIFF'S OPPOSITION TO**
) **DEFENDANT'S MOTION TO DISMISS**
WIKIMEDIA FOUNDATION, INC., et al )

    Defendants

# Contents

Table of Authorities .................................................................................................. 2
    Cases
    Statutes and Rules
    Other
Plaintiff's Memorandum of Law in opposition to Defendants' Motion to Dismiss ..................... 3
Preliminary remarks ................................................................................................. 3
Legal standard ........................................................................................................ 4
    Pleading requirements ......................................................................................... 4
    Defamation ....................................................................................................... 5
        Defamation per se ........................................................................................ 6
    Civil conspiracy ................................................................................................. 7
Count 1: Defamation (all defendants) .......................................................................... 8
Count 2: Defamation (WMF) ...................................................................................... 9
    Statement published
    Of and concerning the plaintiff .............................................................................. 10
    Defamatory
    False
    Either caused economic loss ................................................................................. 15
    Or is actionable without proof of economic loss
Count 3: Civil conspiracy ........................................................................................... 15
Count 4: Breach of implied contract [claim abandoned] ................................................... 19
Conclusion ............................................................................................................. 18
Link Notes ............................................................................................................. 19
Certificate of Service ................................................................................................ 20

# Table of Authorities

## Cases

1. *Conroy v. Fall River Herald News Co.,* 306 Mass. 488, 28 N.E.2d 729, 731-32 (1940). p. 28 .......... 6
2. *Disend v. Meadowbrook Sch.*, 33 Mass.App.Ct. 674, 675, 604 N.E.2d 54 (1992). p. 89 ............ 6, 12
3. *Doe v. Amherst College,* 238 F. Supp. 3d 195 - Dist. Court, D. Massachusetts 2017 ........................ 6
4. *Grant v. John Hancock Mut. Life Ins. Co.,* 183 F.Supp.2d 344, 362-63 (D.Mass.2002) ................... 7
5. *"Iqbal"* John D. ASHCROFT, Former Attorney General, et al., Petitioners, v. Javaid IQBAL et al 129 S.Ct. at 1949 ................................................................................................................................. 4
6. *Kurker v. Hill*, 44 Mass.App.Ct. 184, 689 N.E.2d 833, 836 (1998) .................................................... 7
7. *Lynch v. Lyons,* 303 Mass. 116 , 118-119 (1939) [no copy found, cited in Ravnikar] ...................... 7
8. *Maruho Co., Ltd. v. Miles, Inc.*, 13 F.3d 6, 9 (1st Cir.1993) ............................................................... 7
9. *Massachusetts Sch. Of Law at Andover, Inc. v. Am. Bar Ass'n,* 142 F.3d 26, 42 (1st Cir.2006) ........ 6
10. *Mass. Laborers,'* 62 F.Supp.2d at 244 ............................................................................................ 6
11. *McAvoy v. Shufrin,* 518 NE 2d 513 - Mass: Supreme Judicial Court 1988, 401 Mass. at 593 ......... 6
12. *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) ....................... 5
13. *Noonan v. Staples, Inc.,* 556 F.3d 20 (1st Cir. 2009) ..................................................................... 6
14. *Noonan v. Staples, Inc.,* 707 F. Supp. 2d 85 (D. Mass. 2010) ................................................... 5, 6
15. *Ocasio-Hernandez v. Fortuño-Burset,* 640 F. 3d 1 - Court of Appeals, 1st Circuit, 2011. .............. 4
16. *Payton v. Abbott Labs, 512 F.Supp.* 1031, 1035 (D.Mass.1981) ....................................................... 7
17. *Peñalbert-Rosa v. Fortuño-Burset,* 631 F.3d 592, 595 (1st Cir.2011) ............................................. 5
18. *Ravnikar v. Bogojavlensky,* 438 Mass. 627, 629-630 (2003) ........................................................... 7
19. *Sanchez v. Pereira-Castillo,* 590 F.3d 31, 49 (1st Cir.2009) ............................................................. 5
20. *Sepúlveda-Villarini v. Dep't of Educ. of P.R.,* 628 F.3d 25, 29 (1st Cir.2010) (Souter, J.) . ............. 5
21. *Shaari v. Harvard Student Agencies, Inc*., No. CA 907810D, 1996 WL 1186873, at *9 (Mass.Super. July 19, 30*30 1996) ........................................................................................................................ 6
22. *Shafir v. Steele,* 431 Mass. 365 , 373 (2000) ................................................................................. 7
23. *Sharratt v. Housing Innovations, Inc.,* 310 NE 2d 343 - Mass: Supreme Judicial Court 1974 ........ 6
24. *Stanton v. Metro Corp.,* 438 F.3d 119, 124 (1st Cir.2006) ............................................................. 6
25. *Taylor v. American Chemistry Council,* 576 F. 3d 16 - Court of Appeals, 1st Circuit 2009 ............ 7
26. *"Twombly"* BELL ATLANTIC CORPORATION et al., Petitioners, v. William TWOMBLY et al. 550 U.S. at 555, 127 S.Ct. 1955 ............................................................................................................ 4
27. *White v. Blue Cross & Blue Shield of Mass., Inc.,* 442 Mass. 64, 66, 809 N.E.2d 1034 (2004)) ..... 6

## Statutes and Rules

28. Fed.R.Civ.P. 8(a)(2) ......................................................................................................................... 4
29. 47 U.S.C. § 230................................................................................................................. 11, 14, 18
30. Mass. General Laws Part III Title II Chapter 231 Section 91
31. Mass. General Laws Part III Title II Chapter 231 Section 92 .................................................... 6, 13
32. Mass. General Laws Part III Title II Chapter 231 Section 93

## Other

The Restatement of Torts (Second), § 622 ....................................................................................... 7
The Restatement of Torts (Second) 875-876 (as of 2010) ............................................................ 7, 8

# PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Plaintiff DENNIS G. LOMAX ("Lomax") pro se, hereby responds in opposition to Defendant WikiMedia Foundation, Inc. ("WMF") Motion to Dismiss ECF No. 19, and states:

## PRELIMINARY REMARKS

Plaintiff apologizes to the court for the late filing and thanks the court for additional time provided. Electronic access has now been obtained after an unexpected delay.

Some of the irrelevancies in the Defendant's Motion to Dismiss:

The original complaint is moot.

The amount of damages claimed in either complaint is moot as to a claim of defamation per se.

That the plaintiff mentioned the ban on an obscure page two months after the ban was published, in an attempt to ameliorate damage, is moot as to whether or not that publication was defamatory.

The overall mission of the WMF is moot as to plaintiff's claims.

Most WMF sites exist for the collaborative creation of content. Wikiversity's mission includes an additional function: "learning through doing," and scholars or students have much more interest in personal content there than on other WMF sites. However, this was only relevant to Plaintiff's claim of violation of implied contract, Count 4, which is being abandoned.

The cold fusion study on Wikiversity had largely been abandoned (though parts of it remained useful. What was deleted on Wikiversity (which was much more than cold fusion-related content) was moved to a private wiki, and some of this required difficult work with large data dumps from Wikiversity. Again, this is not relevant to this motion because Count 4 has been abandoned and the WMF is not responsible for the actions of the users prior to WMF involvement.

What was moved to the blog was content from meta about long-term abusers, being later identified as the Smith defendants, and study continued there, attempting to understand what had happened.

Plaintiff believes the necessary elements for claims have been pled, but not necessarily enumerated as such. This memorandum will examine those.

Umbricht was mispelled as "Umbrecht" in ECF No. 16, "Amended Complain," this is expected to be corrected later.

(Plaintiff was unaware that permission was required for a first amendment that added named defendants.) When the issues of law are clear, Plaintiff intends to request the permission of the court to amend the complaint, which will allow the issuance of subpoenas to the other defendants. (

# LEGAL STANDARD

## Pleading requirements

From *Ocasio-Hernandez v. Fortuño-Burset* 640 F. 3d 1 - Court of Appeals, 1st Circuit, 2011.[15].

> We distill the following principles from *Twombly* and *Iqbal*.
>
> Dismissal of a complaint pursuant to Rule 12(b)(6) is inappropriate if the complaint satisfies Rule 8(a)(2)'s requirement of "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2)[28] *Iqbal,* 129 S.Ct. at 1949[5] *Twombly* 550 U.S. at 555, 127 S.Ct. 1955[26]. A "short and plain" statement needs only enough detail to provide a defendant with "`fair notice of what the ... claim is and the grounds upon which it rests.'" … *Erickson v. Pardus,* 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (218165) ("Federal Rule of Civil Procedure 8(a)(2)[28] requires only `a short and plain statement....' Specific facts are not necessary.").

However, in order to "show" an entitlement to relief a complaint must contain enough factual material "to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." See *Twombly,* see also *Iqbal,* 129 S.Ct. at 1950[5]). "Where a complaint pleads facts that are `merely consistent with' a defendant's liability, it `stops short of the line between possibility and plausibility of entitlement to relief.'" [*Iqbal,*[5] (quoting *Twombly.*[26] In short, an adequate complaint must provide fair notice to the defendants and state a facially plausible legal claim.

In resolving a motion to dismiss, a court should employ a two-pronged approach. It should begin by identifying and disregarding statements in the complaint that merely offer "`legal conclusion[s] couched as ... fact[]'" or " [t]hreadbare recitals of the elements of a cause of action." Id. at 1949-50 (quoting *Twombly*[26] "proceed perforce" by virtue of allegations that merely parrot the elements of the cause of action. See id. at 1950; cf. *Sanchez v. Pereira-Castillo,* 590 F.3d 31, 49 (1st Cir.2009)[19] (disregarding as conclusory, under Iqbal's first prong, a factual allegation that merely " [p]arrot[ed] our standard for supervisory liability in the context of Section 1983" in alleging that defendants had "failed to [supervise] with deliberate indifference and/or reckless disregard of Plaintiff's federally protected rights"). Non-conclusory factual allegations in the complaint must then be treated as true, even if seemingly incredible. *Iqbal,*[5] ("To be clear, we do not reject these bald allegations on the ground that they are unrealistic or nonsensical.... It is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth.").

But cf. *Peñalbert-Rosa v. Fortuño-Burset,* 631 F.3d 592, 595 (1st Cir.2011)[17] ("[S]ome allegations, while not stating ultimate legal conclusions, are nevertheless so threadbare or speculative that they fail to cross the line between the conclusory and the factual.") (internal quotation marks omitted). If that factual content, so taken, "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," the claim has facial plausibility. *Iqbal*.[5] "The make-or-break standard ... is that the combined allegations, taken as true, must state a plausible, not a merely conceivable, case for relief." *Sepúlveda-Villarini v. Dep't of Educ. of P.R.,* 628 F.3d 25, 29 (1st Cir.2010) (Souter, J.).[20]

Although evaluating the plausibility of a legal claim "requires the reviewing court to draw on its judicial experience and common sense," *Iqbal,* [5] , the court may not disregard properly pled factual allegations, "even if it strikes a savvy judge that actual proof of those facts is improbable." *Twombly;*[26] ; see also *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989))[12] ("Rule 12(b) (6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations."). Nor may a court attempt to forecast a plaintiff's likelihood of success on the merits; "a well-pleaded complaint may proceed even if ... a recovery is very remote and unlikely." *Twombly,* [26] (internal quotation marks omitted); *see also id.* at 563 n. 8, 127 S.Ct. 1955 ("[W]hen a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder."). The relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint.

## Defamation

From *Noonan v. Staples, Inc.*, 707 F. Supp. 2d 85 (D. Mass. 2010)[14]:

Under Massachusetts law, to prevail on a claim for defamation the plaintiff must establish that: (1) the defendant published an oral (slander) or written (libel) statement; (2) the statement was about, and concerned, the plaintiff; (3) the statement was defamatory; (4) the statement was false; and (5) the

plaintiff suffered economic loss, or the claim is actionable without proof of economic loss. *Stanton v. Metro Corp.*, 438 F.3d 119, 124 (1st Cir.2006)[24] (citing *White v. Blue Cross & Blue Shield of Mass., Inc.*, 442 Mass. 64, 66, 809 N.E.2d 1034 (2004);[27] *Massachusetts Sch. Of Law at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26, 42 (1st Cir.2006)[9] (quoting *McAvoy*, 401 Mass. at 593, 518 N.E.2d 513)[11]. A statement will be considered "defamatory" if it "may reasonably be [understood] as discrediting [the plaintiff] in the minds of any considerable and respectable class of the community." *Disend v. Meadowbrook Sch.*, 33 Mass.App.Ct. 674, 675, 604 N.E.2d 54 (1992).[2] p. 89

From *Noonan v. Staples, Inc.,* 556 F.3d 20 (1st Cir. 2009)[13]

> . . . under Massachusetts law, even a true statement can form the basis of a libel action if the plaintiff proves that the defendant acted with "actual malice." Mass. Gen. Laws ch. 231, § 92 [31]; *White,* 809 N.E.2d at 1036 n. 4 ;[27] *Conroy v. Fall River Herald News Co.*, 306 Mass. 488, 28 N.E.2d 729, 731-32 (1940)[1]  p.28

> . . . the legal context supports construing "actual malice" as "ill will" or "malevolent intent." p. 29.

> . . . we conclude that Mass. Gen. Laws ch. 231, § 92[31] means "common-law malice" when it uses the term "actual malice." See also *Shaari v. Harvard Student Agencies, Inc*., No. CA 907810D, 1996 WL 1186873, at *9 (Mass.Super. July 19, 30*30 1996)[21] ("To establish `actual malice,' as that term is used in § 92, plaintiff need only prove `disinterested malevolence' rather than `knowing falsity' or `reckless disregard for the truth on the part of the defendants.'"), rev'd on other grounds by *Shaari* 427 Mass. 129, 691 N.E.2d 925 (1998)

see also *Doe v. Amherst College,* 238 F. Supp. 3d 195 - Dist. Court, D. Massachusetts 2017[3]

> Given the facts alleged by Doe, his proposed reading of the Policy and Procedures is not unreasonable. He asserts that a student reading the Policy and Procedures would expect the College to conduct its investigation and factfinding process in such a manner that potentially exculpatory information would be obtained and presented to the Hearing Board in the same manner as inculpatory information, and that this was not done in his case. Whether such a reading of the Policy and Procedures was, in fact, objectively reasonable given the specific facts in this case turns on evidence extrinsic to the Policy itself. Doe alleges the investigator took inadequate steps to uncover Jones's contemporaneous written communications, even though such communications could have been relevant and exculpatory. He further asserts the content of Jones's text message exchanges were, in fact, relevant and exculpatory. For purposes of the motion before the court, Doe has alleged sufficient facts, from which the court can plausibly infer the investigation and fact-finding process was inadequate. Therefore, the court denies Defendants' Motion for Judgment on the Pleadings as to this theory of the breach of contract claim.

**Defamation per se**

From *Sharratt v. Housing Innovations, Inc.*, 310 NE 2d 343 - Mass: Supreme Judicial Court 1974.[23]

> [. . .] all libel is actionable per se. [. . .]

(There is no requirement to plead special damages.)

> The general damages recoverable in a defamation action are those naturally and necessarily flowing from the wrong. They include damage to reputation [. . .]

From *Ravnikar v. Bogojavlensky,* 438 Mass. 627, 629-630 (2003)[18]

> Four types of statements are actionable without proof of economic loss: statements that constitute libel, see *Shafir v. Steele,* 431 Mass. 365 , 373 (2000)[22]; statements that charge the plaintiff with a crime; statements that allege that the plaintiff has certain diseases; and statements that may prejudice the plaintiff's profession or business, see *Lynch v. Lyons,* 303 Mass. 116 , 118-119 (1939). If the statement comes within one of these four exceptions, a plaintiff may recover noneconomic losses, including emotional injury and damage to reputation. See *Shafir v. Steele*, supra; *Restatement (Second) of Torts*, supra at § 622 comment b, § 623 comment a. An undamaged plaintiff may recover nominal damages. [Note 4] See *Shafir v. Steele*, supra; *Restatement (Second) of Torts*, supra at § 623 special note on remedies for defamation other than damages.

## Civil conspiracy

From *Taylor v. American Chemistry Council,* 576 F. 3d 16 - Court of Appeals, 1st Circuit 2009[25]:

> Massachusetts recognizes two types of civil conspiracy, so-called "true conspiracy" and conspiracy based on section 876 of the *Restatement (Second) of Torts*. *Kurker v. Hill*, 44 Mass.App.Ct. 184, 689 N.E.2d 833, 836 (1998)[6] ; see also *Grant v. John Hancock Mut. Life Ins. Co.,* 183 F.Supp.2d 344, 362-63 (D.Mass.2002)[4]

"True conspiracy" is likely not relevant in this case. The court in *Taylor* continues:

> [. . .] The second type of conspiracy, based on section 876 of the Restatement, is a form of vicarious liability for the tortious conduct of others.[20] See *Mass. Laborers,'* 62 F.Supp.2d at 244;[10] *Restatement (Second) of Torts* § 876 (1979). Because it is vicarious liability, this type of civil conspiracy requires an underlying tort. *Mass. Laborers,'* 62 F.Supp.2d at 244.[10] The conspiracy consists in agreeing to, or assisting in, this underlying tort. Massachusetts courts have recognized two theories of liability under section 876:(1) "concert of action," and (2) "substantial assistance" or "aiding and abetting." See *Maruho Co., Ltd. v. Miles, Inc.,* 13 F.3d 6, 9 (1st Cir.1993);[8] Payton v. Abbott Labs, 512 F.Supp. 1031, 1035 (D.Mass.1981).[16]

From *The Restatement of Torts (Second)* 875-876 (as of 2010) covers civil conspiracy of the second type:

> § 875. Contributing Tortfeasors —- General Rule
>
> Each of two or more persons whose tortious conduct is a legal cause of a single and indivisible harm to the injured party is subject to liability to the injured party for the entire harm.
>
> § 876. Persons Acting In Concert
>
> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he
>
>> (a) does a tortious act in concert with the other or pursuant to a common design with him, or

> (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragementto the other so to conduct himself, or
> 
> (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separatelyconsidered, constitutes a breach of duty to the third person.

From *Restatement* 876:

> Comment on Clause (a):
> 
> a. Parties are acting in concert when they act in accordance with an agreement to cooperate in a particular line of conduct or to accomplish a particular result. The agreement need not be expressed in words and may be implied and understood to exist from the conduct itself.
> 
> Whenever two or more persons commit tortious acts in concert, each becomes subject to liability for the acts of the others, as well as for his own acts. The theory of the early common law was that there was a mutual agency of each to act for the others, which made all liable for the tortious acts of any one.

## COUNT 1: Defamation (all defendants)

As conspiracy is alleged, it may be that not all defendants undertake each specific action, but that the actions together worked toward the harmful and defamatory intent. The elements of a claim of defamation: (1) A written statement (2) of and concerning the plaintiff; that was both (3) defamatory, and (4) false; and (5) either caused economic loss, or is actionable without proof of economic loss. [. . .]

Written statements by defendants include:

- Statements by DLS using attack accounts making false claims about the studies and Lomax on Wikiversity, and, later on the meta wiki. Am. Compl.. ¶9.
- A defamatory article on RationalWiki written by DLS. Am. Compl. ¶10. This article continued to be updated with "news" about Lomax from Wikiversity and then the WMF ban.
- Schroeder was recruited with false representations of Lomax activity. Am. Compl. ¶15.
- Chapman, pretending to be an independent user, filed the deletion request on Wikiversity, misrepresenting it and Lomax. He also commented as himself, similarly. Am. Compl. ¶16.
- "Max" was recruited by email to add misleading comments. That email is suspected to be defamatory.

- Complaints about Lomax were sent to Umbricht privately by email, and because Lomax had not violated policies or the terms of use, were likely defamatory.
- Those who joined and supported the defamation a that point were DLS, Chapman, Max, and Vituzzu. Am. Compl.. ¶¶18-19.
- Schroeder falsely claimed that he had been harassed by email by Lomax. Am. Compl. ¶¶20-21.
- Umbricht supported the campaign with misleading and deceptive actions and comments, Am. Compl. ¶¶23-28.
- Those comments were used (and continue to be used) to support internet defamation of Lomax by DLS and/or ODS. Am. Compl. 23, ¶¶39-40
- Vituzzu falsely claimed that Lomax had illegally collected information. Am. Compl. ¶32.

The Motion to Dismiss is about the WMF, not about the other defendants. The remainder of this memorandum will focus on the WMF Motion to Dismiss, which will be assumed to be about the claims against the WMF, not the entire action. COUNT 2 focused on specific WMF activity and its implications.

As conspiracy is alleged, actions of individuals may affect the liability of others who join the conspiracy.

## COUNT 2: Defamation (WMF)

The elements of a claim of defamation as they apply to the WMF:

The WMF published a written statement. Am. Compl. ¶37 .

(1) of and concerning the plaintiff; that was both

(2) defamatory, and

(3) false; and

(4) either caused economic loss, or is actionable without proof of economic loss. [. . .]

**Statement published**

There is no controversy as to the WMF publishing a statement that they banned Abd.

## Of and concerning the plaintiff

There is no controversy that it was concerning the plaintiff, as Abd was well known as being Abd ul-Rahman Lomax, the plaintiff, birth and legal name Dennis G. Lomax, and WMF global bans are directed at the person, not the account.

## Defamatory

In spite of WMF claims, obviously self-serving, that attempt to make an Office ban meaningless, WMF policy, also published by them, is clearly intended to assure the massive community of volunteers, on which the Foundation's wiki empire depends, that they will not be banned arbitrarily, but only for serious violations of the Terms of Use (TOU). Lomax did not violate the TOU.

## False

While plaintiff acknowledges that he was banned, the **reasonable implications** of the published ban, however, were clearly **false**.

The WMF has provided DE 21-2 as a snapshot of the Global Ban Policy, apparently as of June 21, 2019, which is not the version that would have been in effect as of the date of Abd's ban. However, there are no significant differences, other than the list of banned users, which is transcluded from another page, archived as of the date of Abd's ban [http://archive.is/pmJMD], 01:13, 24 February 2018], when Abd's account name was added to the list. Notice was placed on Abd's meta user page as edited at 1:11, 24 February 2018 [archive: http://archive.is/r2UlH]. This page then read:

> Consistent with the Terms_of_Use Terms of Use, Abd has been banned by the Wikimedia Foundation from editing Wikimedia sites. Please address any questions to trustandsafety(at)wikimedia.org.

The global lock was set at 01:11 24 February 2018.

The WMF has provided a copy of the Terms of Use as DE 21-1, as of 7 June, 2019, whereas the Terms of Use relevant to this action would be the version as of 14 February, 2018, [archive: http://archive.is/EelWz]. There is, however, no significant difference.

In those Terms of Use (emphasis added):

> In the interests of our users and the Projects, in the extreme circumstance that any individual has had his or her account or access blocked under this provision, he or she is prohibited from creating or using another account on or seeking access to the same Project, unless we provide explicit permission. Without limiting the authority of the community, **the Wikimedia Foundation itself will not ban a user from editing or contributing or block a user's account or access solely because of good faith criticism that does not result in actions otherwise violating these Terms of Use or community policies.**

The WMF may have violated that provision of the Terms of Use. They claim Section 230 immunity for a claim of harm from this, but this has never been tested, and Claim 4 of the Am. Compl, which would cover that, is abandoned because it is legally difficult and of little value to Plaintiff, as Plaintiff is not seeking to edit WMF projects, nor is the right to edit of high value.

Plaintiff has been unable to find any notification to him of the ban from the WMF. The lock shuts off WMF email, so the normal notifications of edits to his user page would not be sent. He likely first learned about it from the announcement of the ban by "ODS" (Defendant Oliver D. Smith), on RationalWiki, 22:20, 24 February, 2018. [archive: http://archive.is/iHM5W]

From this point of view, the claim of a ban was not *strictly* true. However, the implications of the ban *publication* are far more serious. The public will routinely consider a WMF ban as an indicator that a reputable organization has carefully investigated claims of harassment or other complaints and has

concluded that a user is a serious risk. Plaintiff concludes that the technical error was not significant, but the substantially false implications of the statement are very significant.

Quoted in *Noonan* (2009)[13]: A statement will be considered "defamatory" if it "may reasonably be [understood] as discrediting [the plaintiff] in the minds of any considerable and respectable class of the community." *Disend v. Meadowbrook Sch.,* 33 Mass.App.Ct. 674, 675, 604 N.E.2d 54 (1992)][2]

There are many evidences which can be adduced to show how bans are represented by the WMF and how they are understood by the public. Defendant WMF claims truth, but deprecates what the statement implies by citing Noonan (2009)" From Defendant's Memorandum, ECF No. 20, p.15:

> "see also Noonan,556 F.3d at 28 (no defamation claim, without proving actual malice, where company truthfully stated that it fired plaintiff after investigation determined him to be out of compliance with company policy).

In that case, the statement was ruled "truthful," both literally *and in implication* as to the investigation undertaken, *after discovery,* but trial was still required to consider the possibility of malice.

As defined in Massachusetts law, as interpreted in the First Circuit in *Noonan* (2009 and 2010[14]), and even after discovery in the 2009 case, malice, alleged, could not be ruled out, though evidence for it was weak (but considered plausible). *Noonan* (2009) actually went to trial on that issue, and malice was found unproven by the jury. However, then, in 2010, there was another claim from Noonan over another defamation by an officer of the corporation, again, the court ruled that the statement was *substantially* true, yet the case must go into discovery on the issue of malice, even though evidence on that was circumstantial, not direct, but considered plausible.

The WMF claims there is "no evidence" for malice. However, they also cite evidence, i.e, prior behavior that would reasonably lead the plaintiff to suspect malice, similarly to that in *Noonan*. In addition, the ban was apparently based on complaints, where investigation by the WMF would have revealed that the complaints

were not made in good faith and were, in fact, themselves defamatory. This leads plaintiff to conclude that actual malice was present, and "actual malice" must be understood as defined in *Noonan* (2009):

> . . we conclude that Mass. Gen. Laws ch. 231, § 92 means "common-law malice" when it uses the term "actual malice." See also *Shaari v. Harvard Student Agencies, Inc.,* No. CA 907810D, 1996 WL 1186873, at *9
>
> (Mass.Super. July 19, 1996)[21] ("To establish `actual malice,' as that term is used in § 92[31], plaintiff need only prove `disinterested malevolence' rather than `knowing falsity' or `reckless disregard for the truth on the part of the defendants.'"), [. . .]

Defendant WMF (ECF 20, p. 15) also cites *Doe v. Amherst College,* 238 F. Supp. 3d at 195. In that case, yes, judgement on the pleadings was allowed, but the case turned around, because evidence appeared that the investigation truthfully reported had been seriously defective. This is analogous to this case: WMF policies and announcements claim that bans are carefully investigated, which plaintiff knows must be false in this case, because plaintiff did not violate the terms of use.

By the action of the ban, the WMF joined in the conspiracy to defame, encouraging and providing it with "proof" of plaintiff's alleged harmful behavior, because the ban may easily be cited in comments and communications, as it frequently has been. It provides strength to what would otherwise be mere claims on the part of parties with little or no reputation.

Disinterested malice, as a possibility here, does not require motive, per se, but a malicious neglect of the rights of one harmed by the tort, of what should be a reasonable expectation of harm from the publication.

There is no justification, no necessity, for the publication of bans, absent additional conditions that are, in fact, absent here (plaintiff has not edited the projects in any way since the ban was issued.

It is understandable that the WMF wants to protect complainants, but acting on complaints without developing independent evidence of harmful activity, which would then generate facts that could be addressed with the accused without disclosing complainant identities, and then publishing the result, without

necessity (since a ban may be accomplished without publication), is an unconscionable neglect of the rights of the accused user and an invitation to abuse by complainants.

That is, the fact of a complaint, in itself, should be irrelevant, if the complaint has a basis. As this case shows, a small group of users, out of millions, may coordinate complaints to make a situation seem to justify a ban, without any factually serious situation existing.

The WMF does have the right to ban, this has not been challenged. If it errs in this, there would still be no clear cause of action, per 47 U.S. Code § 230[29] and common sense, though that Office bans are unappealable does create possible unnecessary harm in the ban itself.

However, there is no justification for *actually publishing the ban* other than 'this is their policy.' Users have no real notice in the TOU or the policy that they can be banned at any time for any reason or no reason, because *the reservations will be read as still requiring the existence of a serious situation*, i.e., not "no reason," or, more to the point, not "We don't like users like you. and you have criticized us or our valuable volunteers, so begone." Malice. (But we do not know what the reason for the ban was, and, absent discovery, this remains unclear except for the action being clearly in response to known complaints, pursuing a campaign to harass and harm plaintiff and his work, without factual justification other than possible misleading fragments of evidence presented in isolation from context.

Nor does the TOU, which users presumably agree to, mention publication. It refers to the community ban policy, which is irrelevant to WMF Office bans, and which, as actually practiced, provided opportunity for an accused user to contradict evidence and arguments presented, and to make statements in defense. Plaintiff would not have been eligible for a community ban discussion to be opened, because there was only one actual individual wiki community ban in place, the policy required a minimum of two community bans (not merely a block), but the requisite process for a community ban on Wikiversity was never followed, and would probably have failed. The WMF Office ban made it moot.

**Either caused economic loss**

(5)  As to damage to the plaintiff from the defamation, determining actual damages is difficult, because the effect of the defamation may not be visible. Plaintiff is a journalist/blogger and depends on donations for support of his work. How many people saw or were shown the defamatory article on RationalWiki or otherwise saw the confirmation of plaintiff's alleged harassment and harmful behavior, resulting from the WMF publication of the ban is unclear. How many people would have contributed but did not? It may be impossible to    etermine. Incidents of personal harm are known to plaintiff, however, and certainly there has been extensive effort to defame using the WMF ban for support, including a web page comment to plaintiff's daughter, and family of a friend who were very concerned about her friendship with the plaintiff, based on the published defamation.

(6)

**Or is actionable without proof of economic loss.**

Plaintiff is claiming defamation per se, which does not require specified damages to be actionable. Plaintiff's personal reputation has been harmed.

# COUNT 3: Civil conspiracy

These facts and claims are in the Complaint, and there is specific evidence for each.

1. The affair began with harassment of a Wikiversity user by D. Smith. This had nothing to do with cold fusion. Am. Compl. ¶7.[33][34][35][36][37]

2. Plaintiff Lomax identified the harassment, arranged for global locks for Smith's numerous accounts, and began to document how an anonymous user was able to create damage, and looking at the particular Long Term Abuser whose identity began to emerge. Am. Compl. ¶¶8-9.[38][39][40]

3. D. Smith's attacks on Wikiversity became intense, overwhelming local administrative capacity, so Lomax moved the documentation (the "study") to the meta wiki, where there is much more reliable administration. Am. Compl., ¶10.

4. D. Smith then threatened Lomax with retaliation: ""1 will do my best behind the scenes via email to get admins to delete all your material." To accomplish this, he needed to recruit others to participate in what became a conspiracy to defame. Am. Compl. ¶11.[41]

5. Defendant Chapman held grudges from prior events on Wikipedia. Am. Compl. ¶2.[42] Defendant Schroeder was also identified by Smith as one who might assist as well, and both were recruited to join the conspiracy. Am. Compl. ¶14[43] and 15.[44][45][46]

6. These defendants then created a deletion discussion on Wikiversity, for a major project I had worked on there, which had never been a source of disruption. Defendant "Max" was recruited to join that. Am. Compl. ¶16, 18.[47]

7. Defendant Umbricht was recruited to join the conspiracy by private complaint. Am. Compl. ¶25

8. Defendant Vituzzu is suspected of joining the conspiracy, and he also had cause to resent Lomax, who had exposed and documented abuse of his role as a Steward, years before. The degree of his participation is not known. He commented in the deletion discussion with irrelevancies. There is cause to suspect that he participated in the conspiracy more than that. Am. Compl. ¶19[48][49] and ¶ 32[61]

9. Schroeder falsely and maliciously claimed that Lomax had harassed him by email. Am. Compl. ¶ 20 and 21[50][51]

10. Umbricht then collaborated with the conspiracy in various ways. He removed a request for administrative attention. Am Compl.  22-23[52][53] and carried out the threatened deletions. Am. Compl. ¶¶24[54] and 31.[55] Umbricht's action was entirely contrary to normal procedure.

11. Umbricht then blocked Lomax for trumped-up cause, also contrary to policy, Am. Compl. ¶¶26-27[56][57][58] which block was immediately used for defamation on RationalWiki by D. Smith. Am. Compl. ¶30.[59][60][¶

12. D. Smith, his brother O. Smith, Chapman, Schroeder, Umbricht, and "Max" filed coordinated complaints to the WMF. Am. Compl. ¶34.[62][63]

13. The WMF then Office-banned Lomax. Complaints filed by multiple persons will often be taken much more seriously than isolated ones.

14. The WMF may have acted with malice, they may resent critics and people they believe are disruptive. The founder of Wikipedia has referred to proponents of alternative medicine as "lunatic charlatans" and it is possible that they believed that cold fusion was "pseudoscience," though what I report on is mainstream research, merely "fringe," i.e., not widely understood.

15. Office bans, while they may be issued for any reason or no reason, as they claim, are nevertheless represented by the WMF as only used for very serious cases, and they list examples indicating serious misbehavior. It is widely believed among Wikipedia editors that all globally banned users have engaged in such serious and repeated violations of the Terms of Use, and this is what the general public will assume as well, the WMF being seen as a reputable organization. Am. Compl. ¶¶28, 29.[64][65]

16. The fact of the ban and the statements of Umbricht have been very widely quoted as proof of Lomax disruption and unreliability and more. As an example, a comment received by one of his daughters is referenced. Am. Compl., ¶40.[66]

The elements of defamation are discussed in those sections. Here, there was a conspiracy to harm and defame. Some defamatory statements were made publicly, others were private, and discovery will be needed to determine the extent of this. Whether the WMF had a conscious malicious intent, or merely incompetently

allowed themselves to be used by the conspirators, is not known to the plaintiff, but malice is suspected, and malice may be part of the reason why the WMF publishes the names of banned users. This has, indeed, long been suspected by those familiar with the WMF. As well, the clearly poor investigation combined with secrecy, lack of warning, and refusal of any appeal process or communication with the user is unconscionable

## COUNT 4: Breach of implied contract

This count is withdrawn to simplify this case.

## CONCLUSION

A WMF Office ban is intrinsically defamatory, from its rarity and how it has been explained to the community. The WMF may be protected by 47 U.S.C. § 230 from liability for error in banning, but not from defamation from *publication* of the ban, which has been unnecessary for all bans issued by the WMF. That publication is far from ordinary service provider practice, and, being content that they created, is not protected.

In addition to general suspicion from how the WMF has handled critics, there is clear evidence of a conspiracy to defame. By responding with a published ban based on the complaints of the conspirators, the WMf apparently aided and abetted the conspiracy, and actual malice is then reasonably suspected. Sufficient facts are alleged to show reason to suspect malice,

From precedents and plausibility, discovery will be required, as a minimum, before any conclusion that the claim of malice is not plausible. It is not a mere conclusory allegation.

There are questions of fact that may require a jury to decide, as in *Noonan* (2009). .

1. Was there a conspiracy to harm and defame?

2. Was the WMF ban investigation careful and thorough, as the WMF has claimed for ban process?

3. Was there a reasonable basis for the ban in plaintiff's behavior?

4. Is a ban as published by the WMF defamatory?

5. Is publication necessary (and therefore possibly excusable)?

6. Did the WMF join in a conspiracy by issuing and publishing the ban?

These suffice as cause to reject the WMF Motion to Dismiss, DE 19, except as to Count 4, which may be dismissed.

## Link Notes

1. https://scholar.google.com/scholar_case?about=18438813506502034186
2. https://scholar.google.com/scholar_case?case=15471113495963576503
3. https://scholar.google.com/scholar_case?case=18437460166414926649
4. https://scholar.google.com/scholar_case?case=1040013825542681605
5. https://scholar.google.com/scholar_case?case=16725752296468120395
6. https://scholar.google.com/scholar_case?case=2680286201443715958
7. [no copy found]
8. https://scholar.google.com/scholar_case?case=10869613252491457030
9. https://scholar.google.com/scholar_case?about=1776499499745068691
10. https://scholar.google.com/scholar_case?case=3428171528843635561
11. https://scholar.google.com/scholar_case?case=13910415247775689773
12. https://scholar.google.com/scholar_case?case=12489268253436640680
13. https://scholar.google.com/scholar_case?case=7352477566130127331
14. https://scholar.google.com/scholar_case?case=8915557502328077068
15. https://scholar.google.com/scholar_case?case=4657146595931701950
16. https://scholar.google.com/scholar_case?case=2280899024381611539
17. https://scholar.google.com/scholar_case?case=17106628880534537680
18. https://scholar.google.com/scholar_case?case=11009322118672810859
19. https://scholar.google.com/scholar_case?case=16871286221245731119
20. https://scholar.google.com/scholar_case?case=4084753252467941028
21. https://scholar.google.com/scholar_case?case=15286113611963684459
22. https://scholar.google.com/scholar_case?case=13882242993915552372
23. https://scholar.google.com/scholar_case?case=6010313290058963341
24. https://scholar.google.com/scholar_case?case=4463266652761121790
25. https://scholar.google.com/scholar_case?case=6515321697024534688
26. https://scholar.google.com/scholar_case?case=913703117340005992
27. https://scholar.google.com/scholar_case?case=15848755304560275081#
28. https://www.law.cornell.edu/rules/frcp/rule_8
29. https://www.law.cornell.edu/uscode/text/47/230
30. https://malegislature.gov/Laws/GeneralLaws/PartIII/TitleII/Chapter231/Section91
31. https://malegislature.gov/Laws/GeneralLaws/PartIII/TitleII/Chapter231/Section92

32. https://malegislature.gov/Laws/GeneralLaws/PartIII/TitleII/Chapter231/Section93
33. https://en.wikipedia.org/wiki/Wikipedia:Sockpuppet_investigations/Blastikus/Archive#22_June_2017
34. https://en.wikipedia.org/wiki/Wikipedia:Sockpuppet_investigations/Blastikus/Archive#22_June_2017
35. https://en.wikiversity.org/wiki/Wikiversity:Request_custodian_action/Archive/20#User:Ben_Steigmann
36. https://en.wikiversity.org/w/index.php?&title=Special%3AContributions&contribs=user&target=Sci-fi-
37. http://coldfusioncommunity.net/w/index.php?title=Wikiversity/Parapsychology/Sources/Steigmann&oldid=2390
38. https://meta.wikimedia.org/wiki/Steward_requests/Checkuser/2017-09#Sci-fi-@en.wikiversity
39. https://meta.wikimedia.org/wiki/Steward_requests/Checkuser/2017-10#Sci-fi-@en.wikiversity_2
40. https://meta.wikimedia.org/wiki/Steward_requests/Global/2017-09#Global_lock_for_Michael_skater
41. https://meta.wikimedia.org/w/index.php?title=User_talk:Abd&diff=17284295&oldid=17284254
42. https://en.wikipedia.org/wiki/Wikipedia:Requests_for_arbitration/Abd_and_JzG
43. https://archive.is/h8Z3H
44. http://archive.is/wKgdp 10. Abd_posting_slanders_about_you
45. https://en.wikipedia.org/wiki/Special:Contributions/193.70.12.231
46. https://en.wikipedia.org/wiki/Special:Contributions/23.105.134.162
47. https://en.wikiversity.org/wiki/Wikiversity:Requests_for_Deletion/Archives/16#Cold_fusion
48. https://archive.is/qCLWS
49. https://lists.wikimedia.org/pipermail/wikimedia-l/2019-June/092616.html
50. https://en.wikiversity.org/w/index.php?title=Wikiversity:Requests_for_Deletion&diff=prev&oldid=1791745
51. http://coldfusioncommunity.net/wikiversity/alleged-harassing-emails/
52. https://en.wikiversity.org/w/index.php?title=Wikiversity:Request_custodian_action&oldid=1792005
53. https://en.wikiversity.org/w/index.php?title=Wikiversity:Request_custodian_action&diff=next&oldid=1792005
54. https://en.wikiversity.org/wiki/Wikiversity:Requests_for_Deletion/Archives/16#Cold_fusion
55. https://en.wikiversity.org/w/index.php?title=Special:Log&offset=201801151636&limit=147&type=delete&user=Mu301
56. https://en.wikiversity.org/wiki/Special:Log?type=block&user=Mu301&page=User%3AAbd
57. https://en.wikiversity.org/w/index.php?title=User_talk:Abd&diff=1795626&oldid=1795603
58. https://en.wikiversity.org/w/index.php?title=User_talk:Abd&diff=1795988&oldid=1795672
59. https://rationalwiki.org/w/index.php?title=Lomax_ul-Rahman_Lomax&diff=prev&oldid=1909380
60. https://rationalwiki.org/w/index.php?title=Abd_ul-Rahman_Lomax&diff=next&oldid=1909381
61. https://meta.wikimedia.org/w/index.php?title=Steward_requests/Checkuser&oldid=17763603#Bodybuilder1991@en.wikiversity
62. https://www.wikipediasucks.co/forum/viewtopic.php?f=5&t=443&p=3579#p3579
63. http://coldfusioncommunity.net/w/index.php?title=User_talk:Abd&oldid=21622
64. https://meta.wikimedia.org/w/index.php?title=WMF_Global_Ban_Policy/List&diff=15987853&oldid=15947317
65. https://en.wikipedia.org/wiki/Wikipedia:Community_response_to_the_Wikimedia_Foundation's_ban_of_Fram#Comments_from_Risker
66. http://coldfusioncommunity.net/libel

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 8, 2019, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record for the parties.


(s) Dennis G. Lomax
Dennis G. Lomax, pro se
August 8, 2019